UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIERRA TECH de MEXICO, S.A. de C.V., | § | |
| a Mexican corporation, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| PURVIS EQUIPMENT CORPORATION, | § | |
| a Texas corporation, and | § | 3:15-CV-4044-G |
| JOHN MANLEY, | § | |
| an individual, | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISQUALIFY AND *EMERGENCY* REQUEST FOR INTERIM STAY WITH BRIEF IN SUPPORT

Defendants, Purvis Equipment Corp. (Purvis) and John Manley hereby move to disqualify Robert D. Martinez, and his firm, Cotton Schmidt & Abbott, L.L.P. (CSA), from representation of the Plaintiff, Tierra Tech de Mexico, S.A. de C.V. (TTM), showing:

## MOTION

1.     Previously Martinez and CSA represented Manley and TTM on a limited basis in a business deal in which the parties were negotiating and setting up a new business entity, Tierra Tech USA, Inc. (TTUSA) in which both Manley and TTM would be joint owners.   See Appendix (Appx) Exhibit (Ex.) A (Manley Declaration) ¶¶ 3-5 (Appx at 3); Ex. B (Martinez representation letter) (Appx at 8-13); Ex. C (Manley email to Martinez with signature page of the letter) (Appx at 14-15); Ex. D (billing entry noting receipt) (Appx at 17).

2.     Theretofore and concurrently, Purvis, a closely held corporation of which Manley owns the stock and is president, was working as a distributor for TTM.  Ex. A ¶ 6 (Appx at 3-4).

3.     During the course of the negotiations and steps taken in setting up TTUSA, Martinez received and sent out numerous emails to both Manley and representatives of TTM, all,

or at least virtually all, of those initiated by Martinez marked as: "**CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**" (**CACC**).  Ex. A ¶ 7 (Appx at 4).

4.    The emails are not attached due to volume and because this would require Manley to "reveal the very confidences he seeks to protect." *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 511 (S.D. Tex. 1996). *Cf. also id.* at 511 n.8 ("even if that information also involved a third party" [such as TTM representatives]).  However, some content of emails demonstrating communications in which both Manley and Martinez were involved with respect to TTUSA, as verified by Ex. A ¶ 8 (Appx at 4-5), includes, in reverse chronological order:

a.    Martinez **CACC** March 16, 2015 email to TTM's Arturo Gil, **copy to John Manley**, with February 2015 bill, with the subject of retention on the bill being "Creation of New LLC by members," which includes various information about setting up TTUSA, including: "Complete revisions to bylaws and agreement to form corporation" and "Receive and review e-mail message from John Manley with instructions regarding registered agent."

b.    Martinez **CACC** March 13, 2015 email to TTM representatives and John Manley: "Attached are the draft minutes of the [TTUSA] meeting."

c.    Martinez **CACC** March 9, 2015 email to 'Tierratech', addressing John Manley, asking whether certain provisions "are OK for **both you and the corporation**?" (emphasis added).[1]

d.    Martinez **CACC** March 6, 2015 email to TTM representatives and John Manley, including **advice from Manley** about how TTUSA should be set up and **rights that the parties would have**.

e.    Martinez **CACC** March 4, 2015 email to TTM representatives and John Manley which **included Manley's expectations as to TTUSA**.

f.    Martinez February 23, 2015 email to John Manley: "Rafa has asked me to **discuss a couple of things with you regarding the corporation**" (emphasis added).

g.    Martinez **CACC** February 20, 2015 email, copy to John Manley, with corporate founding documents for "Tierra Tech USA, Inc." with the shareholders being

---

[1] Martinez notified Manley he did not represent Manley with respect to an *employment* agreement being negotiated by TTM for the TTUSA entity.  However, it is clear Manley was represented for purposes of the setup of TTUSA.

"American Ultrasonic Cleaning, S.L., a Spanish business" and "John Manley."

h.  Martinez **CACC** February 18, 2015 email to TTM representatives and John Manley: "Attached are documents sent to, and received from the Texas Secretary of State's office showing that the corporation has been created.  We should work on completing the agreement and bylaws for the meeting in March."

i.  Martinez **CACC** July 25, 2014 email to TTM representative, copy to John Manley and other TTM representatives, noting that "John Manley or a trusted employee of his" could be named as TTUSA's registered agent.

5.  Insofar as TTM has joined Manley as a Defendant in this case, Manley has a basis to, and intends to, assert a counterclaim against TTM arising out of the relationship between Manley and TTM, particularly as relates to TTUSA, in that Manley undertook substantial activity and expended substantial sums in conjunction with TTUSA, or in setting up TTUSA as an operating business entity.  See Ex. A ¶ 9 (Appx at 5); Ex. E (Manley January 19, 2015 email to TTM representatives) (Appx 18), stating: "I have been steadily moving forward to get Tierra Tech started here in the US.  I have hired Michael Piety as you well know.  I have moved my office at home down to the shop.  I have been buying desks, computers, a printer to keep growing.  Also, I have found another building and have already started the leasing process.").

6.  In this litigation, Martinez and CSA have elected to represent one of these joint clients, TTM, against the other joint client, Manley (as well as against Purvis).

7.  Manley has requested that Martinez and CSA withdraw from representation of TTM, relying on, *inter alia*, Rule 1.06(d), Texas Disciplinary Rules of Professional Conduct (Texas Rules), and noting in particular the case of *In re Taylor*, 67 S.W.3d 530 (Tex. App.— Waco 2002, orig. proceeding).  See Ex. F (June 17, 2016 letter from counsel for Manley, Bruce L. James, to Martinez) (Appx at 19-21).  (Texas Rule 1.09 had previously been referenced.)

8.  Martinez and CSA have declined to withdraw.  See Ex. G (Appx at 22-29).

---

## BRIEF

The Fifth Circuit in *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992), stated it was "sensitive to preventing conflicts of interest." *Id.* at 611 (citation omitted). Applicable as one consideration was the "substantial relationship" test, which required "an actual attorney-client relationship" and "a substantial relationship between the subject matter of the former and present representations." *Id.* at 614 (citations omitted). "Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *Id.* (citations omitted). "The test is categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations." *Id.* A party moving for disqualification "need not prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial." *Id.* at 616. Instead there is a "fundamental concern" of "the client's interest in the loyalty of his attorney." *Id.* "*See* Texas Rule 1.06 Comment 1 ('Loyalty is an essential element in the lawyer's relationship to a client.')." *Id.* at 617 (further citations omitted). "A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the clients in the same matter." *Id.* at 618 (citation omitted).

"[T]he existence of a lawyer's duty of loyalty means that the substantial relationship is not solely concerned with the adverse use of confidential information." *Id.* "The substantial relationship test serves not only to ensure the fairness of particular trials, but also to safeguard the integrity of the attorney-client relationship." *Id.* at 619. "[T]he provision of legal advice on a substantially related matter by itself requires disqualification." *Id.* (citation omitted). "This court bars attorneys from appearing in substantially related matters not only to protect individual

parties against the adverse use of information but also 'to aid the frank exchange between attorney and client.'" *Id.* "The trust a lawyer's duty of loyalty inspires in clients encourages them freely to confide in the lawyer and freely to rely on the advice provided by the lawyer." *Id.* at 620. Finally, "information [provided by a client] is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it." *Id.* (citation omitted).

Applying these *American Airlines* rules and principles here requires disqualification of Martinez and CSA from proceeding as counsel for TTM in this case against Manley, Martinez' former client. Martinez clearly represented Manley for purposes of the creation and operation of TTUSA as a joint project, with joint ownership by TTM and Manley. The relationship with respect to TTUSA cannot be "dissected" from TTM's claims that Manley, as the supposed alter ego of Purvis, failed to comply with the arrangement or relationship of Purvis (ostensibly Manley) with TTM. Ex. A ¶ 12 (Appx at 5-6). The relationship was concurrent and overlapping. *Id.* (Appx at 6). In fact, the "demise" of TTUSA is part and parcel of TTM's decision to terminate Purvis/Manley. Ex. A ¶ 13 (Appx at 6). Also, as stated above Manley has grounds for a compulsory counterclaim against TTM arising out of the TTUSA matter which he will file shortly. Therefore, the two matters could hardly be more "substantially related." Martinez even sought Manley's advice regarding setting up TTUSA, recommended Manley as the registered agent, and took into account the parties' respective interests, including Manley's, in "advising" how TTUSA should be set up and on what terms. See Motion ¶ 4 *supra*.

Further, counsel cannot "select" which client to serve in the event of a subsequent dispute arising between them growing out of prior joint representation. Martinez cannot elect to represent TTM against Manley any more than he could have elected to represent Manley against

TTM arising from representation of both in their joint relationship.  In the June 17, 2014 letter of Martinez, Ex. B, the "Re" is: "Creation of New LLC by members: Tierra Tech De Mexico de CV *and John Manley*."  It states that it is an "Engagement Letter."  It states that the purpose of the representation is "to provide legal assistance to Tierra Tech De Mexico SA de CV, *and John Manley* (the "Members") in setting up a new Texas limited liability company in which *they* will be the members (the "Company") *and to provide such general legal assistance as the Company may require*."  (Emphasis added.)

The letter then states a "***Disclosure of Potential Conflicts of Interest***."  Martinez states that that CSA will "be acting as legal counsel to the Company and not as counsel to the individual Members."  Martinez then states: "At the present time, and as we understand the situation, the interests of the Company and the Members are aligned and are not in conflict.  However, a business relationship can develop in a way that creates conflicts that emerge after an entity like the Company has been organized and is operating."  On the next page he states: "In addition, should any conflicts later emerge, you accept the risk that any such conflicts could result in our inability to provide further legal assistance."  Thus, Martinez **clearly recognizes** that a future "conflict" could "result in [CSA's] inability to provide further legal assistance."

At the letter's close, Martinez states: "Thank you for providing us with the opportunity to represent you in this matter."  Then above the space for signatures, for *both* "Tierra Tech De Mexico SA de CV" *and* "John Manley," he has the clients state: "We have read and we understand the terms and conditions of engagement stated above, including those pertaining to conflicts of interest and to the limited nature of our representation.  We waive any right to independent counsel and *request joint* **and limited** *representation*…" (emphasis added).

From this it is clear Martinez was representing both TTM and Manley with respect to the

creation of, and general services for, the entity to be created for them.  As such, he was privy to numerous conversations between himself, Manley, and representatives of TTM, including via multiple emails marked "**CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION.**" Ex. A ¶ 7 (Appx at 4).  Consequently, Martinez was clearly just as certainly representing Manley as he was TTM, albeit for the particular purpose of creating for both of them a United States Company, and then servicing that Company, once created.

A case closely on point is *In re Taylor*, 67 S.W.3d 530 (Tex. App.—Waco 2002, orig. proceeding).  The firm in that instance was sought by the husband and his brother for, *inter alia*, the preparation of a "Stockholder Agreement" covering the shares of the corporation that had been issued in the names of the husband and brother.  The wife (and the brother's wife) "signed it to bind their interests in the shares to the terms of the agreement." *Id.* at 531.  The firm also prepared wills, and a letter to both husband and wife was sent, stating: "In preparing your estate planning documents, *we represented both of you* since we understood that any provisions that each of you made in the documents for the other were purely voluntary and not motivated by the other's promise.  Based on this understanding, we have not viewed our representation as involving parties with conflicting or adverse interests." *Id.* at 532 (emphasis added by the court).

Subsequently, the firm undertook representation of the husband in divorce proceedings against the wife.  The wife secured other counsel, "who, 'as a courtesy,' sent a letter to [the firm's attorney] calling his attention to the … firm's prior representation of [the wife] and asking that the firm withdraw without the necessity of a motion to disqualify." *Id.* (Manley has done the same here.)  The firm responded by denying that it represented the wife "on this matter," that "the preparation of the wills is not a matter at issue in the divorce case and has 'no apparent relationship' to it," and that the stockholder agreement was between the husband and his brother,

not the wife. *Id.* "The letter essentially denies that an attorney-client relationship existed between the ... firm and [the wife] with respect to the stockholder agreement." *Id.* The wife's new attorney filed a motion to disqualify.

The trial court denied it, but the court of appeals granted mandamus to require disqualification, relying on Texas Rule 1.06(d):[2]

> A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter [without consent].

*Id.* at 533.  The court then referenced Comment 9 to the Rule:

> In certain situations, such as in the preparation of loan papers, **or the preparation of a partnership agreement**, a lawyer might have properly undertaken multiple representation and be confronted subsequently by a dispute among those clients in regard to that matter.  **<u>Paragraph (d) forbids the representation of any of those parties in regard to that dispute</u>**....

*Id.* (emphasis added here).

Here, Martinez represented both Manley and TTM in putting together a business deal or business organization on their mutual behalves.  The parties have had a falling out with respect to the relationship involved, including with respect to TTUSA which resulted from Martinez' representation of them both.  Under *Taylor* and Texas Rule 1.06(d), Martinez and CSA may not now represent one of these clients against the other without consent.  Manley does not consent. *Taylor* is dispositive.

Many other federal and State cases in Texas presage the same result, mostly citing Texas Rule 1.09.  *See, e.g., City of El Paso v. Soule*, 6 F. Supp. 2d 616 (W.D. Tex. 1998) (disqualifying plaintiff's counsel, noting in part: "[T]he party seeking disqualification is not required to point to specific confidences revealed to his former attorney that are relevant to the pending case.  Once

---

[2] "Our discussion will therefore center on the Texas Rules." *American Airlines*, 972 F.2d at 610.

the movant proves that the matters are substantially related, the court will irrebuttably presume that relevant confidential information was disclosed during the former representation." *Id.* at 623 (citations omitted))[3]; *Islander East Rental Program v. Ferguson*, 977 F. Supp. 504, 508 (S.D. Tex. 1996) ("It is beyond dispute that an attorney is prohibited from accepting representation adverse to a former client if the subject matter of the current representation is substantially related to the subject matter of the former representation.") (also noting "traditional notions of common sense and fundamental fairness," *id.* at 509); *John Crane Production Solutions, Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 U.S. Dist. LEXIS 114293 at *9, 2012 WL 3453696 (N.D. Tex. Dallas Div. Aug. 14, 2012) (Fitzwater, C.J.) ("This is true even in cases where there is no chance that confidential information might be used against the former client, since '[a] client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the clients in the same matter.'") (citation omitted); *United States ex rel. Southern Rock, Inc. v. Precision Impact Recovery, LLC*, No. 3:10-CV-1924-K, 2011 U.S. Dist. LEXIS 15517 at *9, 2011 WL 609902 (N.D. Tex. Dallas Div. Feb. 14, 2011) (Kinkeade, J.) ("A comment to Model Rule 1.9 states that a lawyer who has represented multiple clients in a matter may not represent one of the clients against the others in a same or substantially related matter.") (citation omitted); *In re Hoar Construction, L.LC.*, 256 S.W.3d 790, 803 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("[A]ny difference in the nature of the fraud at issue in each action does not diminish the potential for CBY to divulge First Victoria's confidential information."); *In re Kahn*, No. 14-15-00615-CV, 2015 Tex. App. LEXIS 12199 at *8-9 (Tex.

---

[3] *Soule* also notes: "Every facet of the financial affairs of [Defendant] clearly will be explored by the [Plaintiff] during discovery." *Id.* Here, TTM, through Martinez, has indeed propounded discovery as to "every facet" of the financial affairs of both Manley and Purvis, including on the theory that *Purvis is the alter ego of Manley.* See Ex. G at 2: "[I]t is our client's contention that Mr. Manley used Purvis, when convenient to him, as an alter ego to insulate himself from personal accountability."

App.—Houston [14th Dist.] Dec. 1, 2015, orig. proceeding) (mem. op.) ("Comment 4A to Rule 1.09(a) states that the 'same' matter aspect of this prohibition **prevents a lawyer from switching sides** and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer.") (emphasis added); *cf. Senior Living Properties LLC Trust v. Clair Odell Ins. Agency LLC*, No. 3:04-CV-0816-G, 2005 U.S. Dist. LEXIS 8993 at *11 (N.D. Tex. Dallas Div. May 13, 2005) (Fish, C.J.) ("The former representation and the current representation need not involve identical causes of action. ... The two causes of action 'need only involve the same subject matter' in order to be substantially related.'") (citations omitted).

## EMERGENCY REQUEST FOR INTERIM STAY

Plaintiff has propounded extensive and sweeping discovery, including as to virtually all financial affairs of the Defendants. This discovery is currently due on **June 30, 2016**. Because providing such discovery would cause much of the harm that this Motion seeks to avoid by putting this information in the hands of Plaintiffs through current counsel who should be disqualified, Defendants pray that all discovery be **STAYED** until such time as this Court may rule on the instant Motion.

**WHEREFORE**, Defendants pray that the Court will stay discovery while this Motion is considered, and thereupon disqualify Robert D. Martinez and his firm Cotton Schmidt & Abbott, L.L.P. from representing Plaintiff in this action, and for such other or further relief to which Defendants may be entitled.

Respectfully submitted,

/s/ *Bruce L. James*
Bruce L. James
Texas Bar No. 10538000
bjames@whitakerchalk.com

Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK**
  **SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
FAX: (817) 878-0501

**ATTORNEYS FOR DEFENDANTS**
**PURVIS EQUIPMENT CORPORATION**
**AND JOHN MANLEY**

## CERTIFICATE OF CONFERENCE

I hereby certify that Counsel for Plaintiffs, Robert D. Martinez, was requested to voluntarily disqualify himself from representation, and that he declined to do so in his letter of June 15, 2016. Ex. G at page 2 (Appx at 23). Therefore, this Motion is opposed.

/s/ *Bruce L. James*
Bruce L. James

## CERTIFICATE OF SERVICE

I hereby certify that this Motion is being filed via ECF and is thereby being e-served on all counsel of record who have consented to such service on this 22nd day of June, 2016.

/s/ *Thomas F. Harkins, Jr.*
Thomas F. Harkins, Jr.

236486