UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIERRA TECH de MEXICO SA de CV, a Mexican Corporation, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| VS. | ) | 3:15-CV-4044-G |
| PURVIS EQUIPMENT CORPORATION, a Texas corporation, ET AL., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, John Manley ("Manley") and Purvis Equipment Corporation ("Purvis"), to disqualify Robert D. Martinez ("Martinez") and his firm, Cotton Schmidt & Abbott, L.L.P. ("CSA"), from representing the plaintiff, Tierra Tech de Mexico, S.A. de C.V. ("TTMX") (docket entry 23). For the reasons set forth below, the motion is denied.

### I. BACKGROUND

From 2011 until 2015, TTMX was engaged in a distributing relationship with Purvis and Manley, the sole stock holder and president of Purvis. Plaintiff's

Opposition to Defendants' Motion to Disqualify Counsel ("Opposition") ¶ 23 (docket entry 25); Defendants' Motion to Disqualify ("Motion") ¶ 2 (docket entry 23). Also during that time period -- from December 2014 through March 2015 -- TTMX and Manley sought to form a new business entity, Tierra Tech USA ("TTUSA"). Opposition ¶ 23. During the business formation process, Martinez and CSA were employed to provide legal assistance. Engagement Letter ("Letter"), Appendix to Motion ("Motion Appendix") at 24-29 (docket entry 23). On December 22, 2015, TTMX -- represented by CSA -- filed suit against Manley and Purvis for breach of contract claims arising out of the original distributing relationship. Plaintiff's Complaint ("Complaint") (docket entry 1).

On June 22, 2016, Manley moved to disqualify CSA. *See* Motion. On July 13, 2016, TTMX filed a timely response (docket entry 25), to which Manley served a timely reply (docket entry 26). The motion is now ripe for decision.

## II. ANALYSIS

### A. Standard for Motion to Disqualify Counsel

Disqualification cases are guided by state and national ethical standards adopted by the Fifth Circuit. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). In the Fifth Circuit, one of the sources for the standards of the profession is the canon of ethics developed by the American Bar Association. *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

Additionally, courts are to consider the Texas Disciplinary Rules of Professional Conduct because they govern attorneys practicing in Texas generally. See *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995). Lastly, the court also considers, when applicable, local rules promulgated by the court itself. *Id.* Because motions to disqualify are substantive motions which affect the rights of the parties, a party cannot be deprived of its choice of counsel on the basis of local rules alone. *In re Dresser Industries, Inc.*, 972 F.2d at 543.

The court must give careful consideration to motions to disqualify because of the potential for abuse. *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.). Parties may use disqualification motions as "procedural weapons" to advance purely tactical purposes. *In re American Airlines, Inc.*, 972 F.2d at 611. "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of [its] choosing." *United States Fire Insurance Company*, 50 F.3d at 1316.

"A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *In re American Airlines, Inc.*, 972 F.2d at 614 (quoting *Johnston v.*

*Harris County Flood Control District*, 869 F.2d 1565, 1569 (5th Cir. 1989), *cert. denied*, 493 U.S. 1019 (1990)). The party seeking disqualification bears the burden of proving that the present and prior representations are substantially related. *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 760 (W.D. Tex. 2014).

"The substantial relationship test aims to protect the adversary process but also, or as part of this concern, seeks to provide conditions for the attorney-client relationship." *In re American Airlines, Inc.*, 972 F.2d at 620. Additionally, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration. Because of the severity of disqualification, we do not apply disqualification rules mechanically, but we consider [a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *In re ProEducation International, Inc.*, 587 F.3d 296, 300 (5th Cir. 2009) (internal quotations omitted).

B. Application

1. *Attorney-Client Relationship*

"An attorney-client relationship depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). "Whether the agreement is express or implied, however, there still must be some manifestation that *both* parties intended to create an attorney-client relationship;

therefore, one party's mistaken belief is not sufficient, by itself. Accordingly, we examine the parties' statements and action under an objective standard rather than their subjective beliefs." *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex. App.--Houston [14th Dist.] 2010, no pet.) (internal quotations omitted) (emphasis added).

Looking to the engagement letter, Manley contends that the language clearly establishes an attorney-client relationship, Motion at 6-7, while TTMX contends that it clearly does not. Opposition ¶¶ 13, 20. Manley focuses on the language at the beginning of the letter, claiming that CSA clearly stated it would be providing legal assistance to the members, which includes Manley:

> Rafael Quijano, Financial Manager for Tierra Tech De Mexico SA de CV's parent corporation, has requested our firm, Cotten Schmidt & Abbott, L.L.P. ("CSA") to provide legal assistance to Tierra Tech De Mexico SA de CV, and John Manley (the "Members") in setting up a new Texas limited liability company in which they will be members (the "Company") and to provide such general legal assistance as the Company may require. The use of the word "you" in all its forms in this letter refers to the Company.

Motion at 6; Letter *located in* Motion Appendix at 24. In response, TTMX points to the limiting language in the "Disclosure of Potential Conflicts of Interest" section, where the engagement letter explicitly states that CSA would not be representing Manley:

> Mr. Quijano's request is for us to provide legal assistance to the Company. This means that, if this engagement is accepted, our only client will be the Company and we will, at all times be acting as legal counsel to the Company and not as counsel to the individual Members.

Opposition ¶ 13. Manley contends that this language simply meant that CSA would represent Manley and TTMX in setting up TTUSA, but once TTUSA was set up CSA would represent TTUSA. Defendants' Reply In Support of Their Motion to Disqualify ("Reply") ¶ 11 (docket entry 26). Manley also points to language at the bottom of letter -- above where Manley and TTMX's manager's signatures were requested -- as clearly establishing that CSA was representing Manley:

> "We have read and we understand the terms and conditions of engagement stated above, including those pertaining to conflicts of interest and to the limited nature of our representation. We waive any right to independent counsel and request joint and limited representation by Cotton Schmidt & Abbott, L.L.P., the date indicated."

Reply ¶ 14. Manley also points to emails he received from CSA with the marking "**CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**." Motion at 7 (emphasis in original). TTMX points to a different email CSA sent to Manley that stated "[y]ou told me that you understand that our law firm does not represent you and that you are not relying on me for legal advice on this matter. . . . I encourage you to continue to seek independent legal advice . . .." Opposition ¶ 16.

Looking at the engagement letter as well as the limited interactions between the parties, the court concludes that the most plausible meaning of the phrase joint

representation is that "CSA was hired by Manley and TTMX to assist in ***their*** joint enterprise of creating a new business organization." Opposition ¶ 20 (emphasis in Opposition); Reply ¶ 6. Therefore, Manley did have a limited attorney-client relationship with CSA through CSA's joint representation of Manley and TTMX as potential members of the not-yet-formed TTUSA. The fact that this relationship was limited does not mean there was no relationship, but that the only subject matter involved in the prior representation was the formation of TTUSA, and the relationship was limited to Manley as a potential and actual member. See *Commission for Lawyer Discipline v. Guajardo*, No. 01-11-00824-CV, 2012 WL 5545090, at *3 (Tex. App.--Houston [1st Dist] 2012, no pet.) ("The scope of the attorney-client relationship is set by the client and the attorney.").

2. *Substantial Relationship Between Representations*

In order to disqualify opposing counsel, the movant must show "a substantial relationship between the subject matter of the former and present representations." *In re American Airlines, Inc.*, 972 F.2d at 614. The burden is on the moving party to "delineate[ ] with specificity the subject matters, issues, and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *Id.* (internal quotations omitted). "Furthermore, the movant may not rely upon conclusory statements but must provide the trial court with sufficient information so that it can engage in a painstaking

analysis of the facts." *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 579 (Tex. App--San Antonio 1998, pet. denied) (internal quotations omitted). "'While a movant need not divulge any confidences, he must delineate with specificity the subject matter, issues and causes of action presented in [the] former representation.'" *Id.* (internal quotations omitted).

In the present motion, Manley has not delineated with any specificity how the formation of a separate corporation, TTUSA, is substantially related to this contract dispute that does not involve TTUSA. *See* Motion. The first matter involved CSA's limited and joint representation of Manley and TTMX in the formation of TTUSA, and the only legal work conducted was "drafting and/or filing organization governing documents, including the certificate of formation, the shareholder agreement and corporate bylaws." Brief in Support of Plaintiff's Opposition to Defendants' Motion to Disqualify Counsel ("Opposition Brief") at 12 (docket entry 25-2). The present matter involves TTMX's claim against Manley and Purvis for breaching the distributing contract TTMX had with Purvis. *See* Complaint. TTUSA is not a party to the present suit and Purvis was not part of the prior representation. *Id.*; Opposition ¶ 5.

Manley makes several attempts to connect the prior and present representations. He alleges that the relationship between TTMX and Purvis was "concurrent and overlapping" with the prior TTUSA formation representation,

Motion at 5, but fails to cite any authority that says temporal concurrence is a substitute for a substantive relationship between the subject matters. See *In re American Airlines, Inc.*, 972 F.2d at 614 ("the sole issue is whether these prior representations are substantially related to the present case."). Manley also points out that the reason TTMX decided to form TTUSA with him was because of their prior distributing relationship, which is the subject of the present representation. Reply ¶ 19. However, Manley does not explain how any of the TTUSA *representation* involved Manley or Purvis's distribution relationship with TTMX. See *id.* (emphasis added). Manley also claims "[i]n fact, the demise of TTUSA is part and parcel of TTM's decision to terminate Purvis/Manley." Motion at 5 (internal quotations omitted). Again, Manley fails to connect the dots and explain how the "demise" of TTUSA and the termination of Purvis/Manley is related to the present contract claim, or more importantly how CSA's representation of Manley is related to either of those issues. See *id.*

Furthermore, Manley claims he has a compulsory counterclaim against TTMX arising out of the TTUSA matter that "he will file shortly." *Id.* However, a potential future claim is not a sufficient basis for a motion to disqualify. In *Cimarron Agricultural, Ltd. v. Guitar Holding Company, L.P.*, 209 S.W.3d 197, 202 (Tex. App.--El Paso 2006, no pet.), the appellate court reversed a lower court order barring all future representations by counsel in which the movant is a party, holding: "[t]he

appropriate test for determining disqualification is clear and each case is factually specific. Not only must a court painstakingly review the matter, the court must rely upon facts that are capable of being specifically recited in the order. In this case, any finding sufficient to disqualify [the attorney] from future representation would be speculative at best." (internal quotations omitted). There is no counterclaim in the record at this time, and Manley has not explained with any specificity how the issues from the prior representation would be substantially related to any hypothetical issues in his potential counterclaim. *See* Motion at 5. "A potential conflict based on potential issues is simply not the standard." *Hydril Company v. Multiflex, Inc.*, 553 F. Supp. 552, 556 (S.D. Tex. 1982). Furthermore, as this court has previously concluded, when the elements of disqualification are not met at the time of the motion: "[i]f a conflict of interest arises at a later juncture, disqualification may become necessary." *Centerboard Securities, LLC, v. Benefuel, Inc.*, No. 3:15-CV-2611-G, 2016 WL 3126238, at *3 (N.D. Tex. June 3, 2016) (Fish, J.). At this time, Manley has not carried his burden of delineating with specificity the existence of a substantial relationship between the prior and present CSA representations. See *In re American Airlines, Inc.*, 972 F.2d at 614.

3. *State and National Ethical Standards*

Another consideration for disqualification motions are state and national ethical standards. See *In re American Airlines, Inc.*, 972 F.2d at 610 ("As we have

indicated, disqualification cases are governed by state and national ethical standards adopted by the court."). Manley also relies on the relevant Texas Rule 1.06(d), which provides: "A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute." Motion at 8; TEX. GOV'T CODE ANN. § 9, r. 1.06(d) (West 2016). Again however, Manley's motion must fail because he has not shown that this present dispute is "arising out of the matter" from the prior representation. Rule 1.06(d). Furthermore, Manley's claim that the case, *In re Taylor*, 67 S.W.3d 530, 532 (Tex. App.--Waco 2002, no pet.), controls this motion is incorrect. Motion at 7-8. *In re Taylor*, 67 S.W.3d at 531-32, involved a husband and wife who were both represented by a law firm for estate planning services, including the creation of a stock holding agreement that set the market value of the stock they held in the company the husband and his brother had created. When the husband and wife were getting divorced, the husband was represented by the same firm they used for the stock holding agreement and the wife moved to disqualify. *Id.* The court concluded that a substantial portion of the divorce proceedings centered on the meaning of the stock holding agreement, because the stocks had the potential to be valued at over five times as much as the next marital asset. *Id.* at 532-33. Therefore, one of the issues in the divorce arose out of the prior representation in the creation of the stock holding agreement. *Id.*

There is no such relationship between the matters in the present case. *See* Motion. As previously stated, the present representation involves claims that arise out of a distributing contract between TTMX and Purvis and Manley; this representation has not been shown to be substantially related to the prior joint representation of TTMX and Manley creating a separate entity, TTUSA. *See* Complaint. Therefore, this case is clearly distinguishable from *In re Taylor*.

Finally, looking to the national standards embodied in the ABA rules, the court concludes that disqualification is not proper. MODEL RULES OF PROF'L CONDUCT § 1.9 (AM. BAR. ASS'N 2015). Section 1.9 prohibits representation of an adverse party to a former client involving "the same or a substantially related matter." *Id.* Because the present matter has not been shown to be substantially related to the prior matter, under the test established in *In re American Airlines*, 972 F.2d at 614, and Texas Rule 1.06(d), CSA should not be disqualified.

## III. CONCLUSION

For the reasons stated above, Manley's motion to disqualify is **DENIED**.

**SO ORDERED**.

July 29, 2016.

**A. JOE FISH**
**Senior United States District Judge**