UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| TIERRA TECH de MEXICO, S.A. de C.V., a Mexican Corporation, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:15-CV-4044-G |
| PURVIS EQUIPMENT CORPORATION, a Texas corporation, ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |


<u>**MEMORANDUM OPINION AND ORDER**</u>


Before the court are the following motions:  (1) the motion of the defendant John Manley ("Manley") to amend his answer; (2) the renewed motion of Manley to disqualify attorney Robert D. Martinez ("Martinez") and his firm, COTTON, SCHMIDT & ABBOTT, L.L.P. ("CSA"), from representing the plaintiff, Tierra Tech de Mexico, S.A. de C.V. ("TTMX"); and (3) the motion of the defendant Purvis Equipment Corporation ("Purvis") to amend its answer (docket entry 28).  For the reasons set forth below, the defendants' motions are granted.

## I. BACKGROUND

From 2011 until 2015, TTMX was engaged in a distributing relationship with Purvis and Manley, the sole stock holder and president of Purvis. Plaintiff's Opposition to Defendants' Motion to Disqualify Counsel ("Opposition") ¶ 23 (docket entry 25); Defendants' Motion to Disqualify ("Motion") ¶ 2 (docket entry 23). Also during that time period -- from December 2014 through March 2015 -- TTMX and Manley sought to form a new business entity, Tierra Tech USA ("TTUSA"). Opposition ¶ 23. During the business formation process, Martinez and CSA were employed to provide legal assistance. Engagement Letter, Appendix to Motion ("Motion Appendix") at 24-29 (docket entry 23). On December 22, 2015, TTMX -- represented by CSA -- filed suit against Manley and Purvis for breach of contract claims arising out of the original distributing relationship. Plaintiff's Complaint ("Complaint") (docket entry 1). On June 22, 2016, Manley moved to disqualify CSA. Motion. On July 29, 2016, this court issued an order denying Manley's motion to disqualify. Memorandum and Order Denying Manley's Motion to Disqualify ("Order") (docket entry 27).

On August 2, 2016, the defendants both filed motions for leave to amend their answers and Manley filed a renewed motion to disqualify CSA. Defendants' Motions for Leave to File Amended Answers and Manley's Renewed Request for Ancillary Relief of Disqualification ("Renewed Motion") (docket entry 28). TTMX filed a

timely response on August 23, 2016.  TTMX's Response and Objection to the

Defendants' Motions ("Response") (docket entry 32).  Manley filed a reply on

August 31, 2016.  Manley's Reply to TTMX's Response ("Reply") (docket entry 33).

The motions are now ripe for decision.

## II. ANALYSIS

### A. The Defendants' Motions to Amend Answers

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings.

Under Rule 15(a), leave to amend should be "freely given when justice so requires."

This and the other federal rules "reject the approach that pleading is a game of skill

in which one misstep by counsel may be decisive to the outcome and accept the

principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Conley v. Gibson*, 355 U.S. 41, 48 (1957).  This issue was before the Supreme Court

in *Foman v. Davis*, 371 U.S. 178 (1962), where the Court explained:

> Rule 15(a) declares that leave to amend 'shall be freely
> given when justice so requires'; this mandate is to be
> heeded. . . .  In the absence of any apparent or declared
> reason -- such as undue delay, bad faith or dilatory motive
> on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of
> the amendment, futility of amendment, etc. -- the leave
> sought should, as the rules require, be 'freely given.'

*Id.* at 182.

In *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594 (5th Cir. 1981),

the Court of Appeals held:

> 'Discretion' may be a misleading term, for rule 15(a)
> severely restricts the judge's freedom, directing that leave
> to amend 'shall be freely given when justice so requires'. It
> evinces a bias in favor of granting leave to amend. The
> policy of the federal rules is to permit liberal amendment
> to facilitate determination of claims on the merits and to
> prevent litigation from becoming a technical exercise in the
> fine points of pleading.

*Id.* at 597-98.

Since *Dussouy*, the Fifth Circuit has repeatedly held that Rule 15(a) evinces a

liberal amendment policy. See, *e.g.*, *Lowrey v. Texas A & M University System*, 117 F.3d

242, 245 (5th Cir. 1997) ("Rule 15(a) expresses a strong presumption in favor of

liberal pleading"); *Nance v. Gulf Oil Corporation*, 817 F.2d 1176, 1180 (5th Cir. 1987)

("Federal Rule 15(a) counsels a liberal amendment policy"); *Youmans v. Simon*, 791

F.2d 341, 348 (5th Cir. 1986) ("The policy underlying Rule 15(a) is one in favor of

liberal amendment."); *Foster v. Daon Corporation*, 713 F.2d 148, 152 (5th Cir. 1983)

(the purpose of Rule 15(a) "is to assist the disposition of the case on its merits, and

to prevent pleadings from becoming ends in themselves"); *Chitimacha Tribe of

Louisiana v. Harry L. Laws Company, Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982)

(district courts should err on the side of allowing amendments), *cert. denied*, 464 U.S.

814 (1983). A motion to amend, therefore, should not be denied unless there is a

substantial reason to do so. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998)

(citing *Lefall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994)).

The court may weigh in the movant's favor any prejudice to the plaintiff that

may arise from the denial of leave to amend. *Chitimacha Tribe*, 690 F.2d at 1163.

Also, the court may consider whether the amendment adds substance to the original

allegations and whether it is germane to the original cause of action. *Id.* In addition,

denial of leave to amend could compromise the plaintiff's ability to recover damages.

See *Rhodes v. Amarillo Hospital District*, 654 F.2d 1148, 1154 (5th Cir. 1981).

After weighing the factors for and against amendment which are apparent from

the record and the pleadings on file in this case, and in obedience to Rule 15's

command that "the district court should err on the side of allowing amendment,"

*Chitimacha Tribe*, 690 F.2d at 1163, the defendants' motions for leave to amend are

granted.

### B.  Standard for Manley's Motion to Disqualify Counsel

Disqualification cases are guided by state and national ethical standards

adopted by the Fifth Circuit. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.

1992), *cert. denied*, 507 U.S. 912 (1993). In the Fifth Circuit, one of the sources for

the standards of the profession is the canon of ethics developed by the American Bar

Association. *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

Additionally, courts are to consider the Texas Disciplinary Rules of Professional

Conduct because they govern attorneys practicing in Texas generally.  See *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995).  Lastly, the court also considers, when applicable, local rules promulgated by the court itself.  *Id.*  Because motions to disqualify are substantive motions which affect the rights of the parties, a party cannot be deprived of its choice of counsel on the basis of local rules alone.  *In re Dresser Industries, Inc.*, 972 F.2d at 543.

The court must give careful consideration to motions to disqualify because of the potential for abuse.  *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, 927 F. Supp. 2d 390, 394-95 (N.D. Tex. 2013) (Kinkeade, J.).  Parties may use disqualification motions as "procedural weapons" to advance purely tactical purposes. *In re American Airlines, Inc.*, 972 F.2d at 611.  "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of [its] choosing."  *United States Fire Insurance Company*, 50 F.3d at 1316.

"A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements:  (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations."  *In re American Airlines, Inc.*, 972 F.2d at 614 (quoting *Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1569 (5th Cir. 1989), *cert. denied*,

493 U.S. 1019 (1990)).  The party seeking disqualification bears the burden of proving that the present and prior representations are substantially related.  *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 760 (W.D. Tex. 2014).

"The substantial relationship test aims to protect the adversary process but also, or as part of this concern, seeks to provide conditions for the attorney-client relationship."  *In re American Airlines, Inc.*, 972 F.2d at 620.  Additionally, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.  Because of the severity of disqualification, we do not apply disqualification rules mechanically, but we consider [a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."  *In re ProEducation International, Inc.*, 587 F.3d 296, 300 (5th Cir. 2009) (internal quotations omitted).

## C.  Application

As discussed in the Order, Manley satisfied the first element to disqualify CSA by establishing an attorney-client relationship between CSA and himself.  Order at 6-8.  Accordingly, the court will determine whether Manley satisfies the second element.

In order to disqualify opposing counsel, the movant must show "a substantial relationship between the subject matter of the former and present representations."

- 7 -

*In re American Airlines, Inc.*, 972 F.2d at 614.  The burden is on the moving party to

"delineate[ ] with specificity the subject matters, issues, and causes of action common

to prior and current representations and the court engages in a painstaking analysis of

the facts and precise application of precedent."  *Id.* (internal quotations omitted).

"Furthermore, the movant may not rely upon conclusory statements but must

provide the trial court with sufficient information so that it can engage in a

painstaking analysis of the facts."  *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 579

(Tex. App.--San Antonio 1998, pet. denied) (internal quotations omitted).  "While a

movant need not divulge any confidences, he must delineate with specificity the

subject matter, issues and causes of action presented in [the] former representation."

*Id.* (internal quotations omitted).

     In the Order, the court noted that "Manley [did] not explain how any of the

TTUSA *representation* involved Manley or Purvis's distribution relationship with

TTMX."  Order at 9 (emphasis in original).  However, Manley has now sufficiently

connected CSA's TTUSA representation with TTMX's instant contract action.  After

engaging in a "painstaking analysis of the facts" and comparing the subject matter of

the two representatives, the evidence shows that Manley's work under the

distribution agreement shaped the TTUSA shareholder agreement negotiations.

     Manley's distribution agreement with TTMX allegedly called for Manley to

sell Tierra Tech products in the United States.  Complaint ¶ 3.9.  The agreement

purportedly required Manley to pay Tierra Tech the sale price less a 15% set off to cover Manley's costs.  *Id.* ¶ 3.16.  Among other allegations in the Complaint, Tierra Tech contends that Manley failed to "market Tierra Tech Products in a manner mutually beneficial to the parties" as required by the distribution agreement.  *See* Complaint ¶ 9.2.4.

The subject matter of the distribution agreement merged with the TTUSA representation when Manley "told [CSA] detailed information on how [Manley] was already working in the United States as the exclusive distributor of all Tierra Tech products."  Renewed Motion ¶ 7.  Manley purportedly shared this information with CSA because Manley believed that his work with TTMX under the distribution agreement should elevate Manley's status in the TTUSA shareholder agreement.  See *id.* ¶¶ 6-10.

Manley appended email conversations that show the "details" he shared with CSA were not simply a product of Manley's "selective and creative recollection."  *See* Response ¶ 17.  In the email, Martinez states,

> [I]t appears that [Manley] expected the end result of the negotiations would be a partnership between himself and the company and that he would be the managing partner. [Manley] said that he thought Tierra Tech S.L. had the same expectation.  As I understand the way that the company *has done business up to this point*, that would make sense.

- 9 -

Reply, Exh. 8 at 2 (emphasis added).  It is clear that Martinez shared Manley's belief that Manley's prior work should make Manley a partner under the TTUSA shareholder agreement.  Thus, Manley's purported work under the distribution agreement influenced Martinez's advocacy on behalf of Manley in negotiating the shareholder agreement.

TTMX contends that Manley "has continued the broad brush strokes and lack of specificity that the Court found deficient in the original motion."  Response ¶ 4. TTMX implies that the limited nature of the TTUSA representation did not include the distribution agreement.  See *id.* ¶¶ 4-5, 19-20, 22.  However, in the Order, this court expressly acknowledged that the scope of the TTUSA representation included, "drafting and/or filing governing documents, including the certificate of formation, *the shareholder agreement*, and corporate bylaws."  Order at 8 (emphasis added).  Contrary to TTMX's assertion about Manley's lack of specificity, Manley need not disclose his specific words to Martinez.  See *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 623 (W.D. Tex. 1998) ("[T]he party seeking disqualification is not required to point to specific confidences revealed to his former attorney that are relevant to the pending case.").  Manley has also shown that his prior work under the distribution agreement was a point of contention in negotiating TTUSA's shareholder agreement. Thus, Manley has sufficiently "connected the dots" between the distribution agreement and the TTUSA representation.  *See* Order at 9.

TTMX also contends that the information Manley provided to Martinez was "hardly confidential or privileged knowledge." Response ¶ 10. However, the court need not decide whether such information is confidential because there is a substantial relationship between the TTMX distribution agreement and the TTUSA representation. See *In re American Airlines, Inc.*, 972 F.2d at 614 (explaining that after finding a substantial relationship between two matters, "the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation") (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir.), *cert. denied*, 454 U.S. 895 (1981)).

Manley further "connects the dots" by attaching a proposed counterclaim to his Renewed Motion. Renewed Motion, Exh. A. In Manley's previous motion, the court disregarded Manley's references to a *potential* counterclaim and stated that Manley must provide "facts that are capable of being specifically recited in the order." *See* Order at 10.

TTMX contends that Manley's proposed counterclaim is vague and conclusory and "does not call into question any part of the corporate formation or any issues related to it, such as the *shareholder agreement*, the bylaws, the share buy-back, or any other corporate governance issues." Response ¶¶ 5, 22 (emphasis added). However, TTMX's contentions are unavailing. First, Manley's Counterclaim contains facts for the court to specifically recite. See, *e.g.*, *Blanchard & Company, Inc. v. Heritage Capital*

*Corporation*, No. CIV.A. 3:97-CV-0690-H, 1997 WL 757906, at *2 (N.D. Tex. Dec. 2, 1997) (Sanders, J.) (looking to a counterclaim to determine whether two actions were substantially related).  Manley's proposed counterclaim alleges that TTMX promised Manley that Manley would be made a TTUSA partner, "[which Manley] reasonably relied upon in rendering 'promotional' services for TTUSA." *See* Renewed Motion, Exh. A at 13-14; Defendants' Supplemental Document as to the Renewed Motion at 2 (docket entry 29).  Second, as stated above, TTMX's contract action under the distribution agreement directly involves Manley's promotional activities alluded to in the counterclaim.  *See* Complaint ¶ 9.2.4.  Manley's activities under the distribution agreement influenced the TTUSA shareholder agreement negotiations while CSA represented Manley.  Thus, Manley's motion provides facts directly connecting Manley's counterclaims, Manley's purported work under the distribution agreement, and the TTUSA representation.  Manley has carried his burden of showing that Martinez and CSA should be disqualified from representing TTMX in this action.

## III.  CONCLUSION

For the reasons stated above, the defendants' motions are **GRANTED**.  Purvis and Manley shall file and serve their amended answers no later than **October 7, 2016**.  TTMX shall file the entry of appearance of new counsel no later than **November 7, 2016**, or the action will be dismissed.

- 12 -

**SO ORDERED**.

October 4, 2016.

A. JOE FISH
**Senior United States District Judge**